BLEFELD-GOODFRIEND, INC. *v.* UNITED STATES [1]

United States Customs Court, First Division

(Decided July 5, 1938)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Joseph R. Jackson*, Assistant Attorney General (*Richard F. Weeks* and *John J. McDermott*, special attorneys), for the defendant.

[1] C. D. 7.

Before McClelland, Sullivan, and Brown, Judges

Sullivan, Judge: The merchandise in question is described in protest 893041–G, on the invoice with entry 839525 as "Mirror Oval" No. 3020; "Oblong Mirror" No. 3021; and "Square Mirror" No. 3022 (represented by Exhibits 1, 2, and 3); on the invoice with entry 833422 as "Square Mirror" No. 3019 (Exhibit 4), "Oval Mirror" No. 3020 (Exhibit 1), and "Oblong Mirror" No. 3021 (Exhibit 2); on the invoice covered by entry 843008, "Oval Mirror" No. 3017 (Exhibit 5), also items 3020, 3021, and 3022, invoiced as "Oval Mirror," "Oblong Mirror," and "Square Mirror," represented by the exhibits heretofore mentioned having the same item numbers. As to the invoice covered by protest 890775–G all the items described on that invoice are represented by the corresponding exhibits heretofore mentioned. The same is true of the items on the invoice with protest 921888–G.

This merchandise was assessed with duty by the collector of customs at the port of New York at 60 per centum ad valorem under the provision in paragraph 218 (f) of the Tariff Act of 1930 for "all articles of every description not specially provided for, composed wholly or in chief value of glass * * * silvered * * * or decorated or ornamented in any manner."

It is claimed in the protests to be dutiable at 50 per centum ad valorem under the provision in paragraph 230 (b) of the same act for "Glass mirrors * * * not exceeding in size one hundred and forty-four square inches, with or without frames or cases" and not specially provided for.

There are other claims in the protests, which have been ignored by the plaintiff.

The official samples consist of mirrors of heavy glass with beveled edges. Each sample has a piece of black cloth pasted on the back, and is ornamented at the top and bottom with a design representing a spray of leaves and fruit, apparently painted in white on the back of the glass. These samples are "without frames or cases." The largest of the samples is about 9 by 11¾ inches in width and length. The designs do not cover the centers of the mirrors, and do not interfere to any extent with their reflecting qualities.

*Plaintiff's witness Goodfriend* testified that he sells the merchandise represented by Exhibits 1 to 5 "in the same condition as they appear here" to "various chain stores and department stores"; that he has seen them displayed therein after sale; that he had seen sales made of these articles by the stores to whom he sold them, and that they were sold "in the same condition as they appear here"; that he had seen these articles in use usually in homes "as reflectors for various objects which may be placed upon them, or for decorative purposes";

that they were placed on the table in the home "flat on the surface of the table", and "usually some object was placed upon it" such as a vase, "or a console set, or candlestick, or something of that nature"; that these articles have a coating between the felt covering and the glass "for the purpose of causing the glass to reflect images"; that he can see his reflection in the glass of these exhibits with reasonable clarity, and that such reflection compares favorably with the reflection obtained when he looks in his shaving mirror; and that he did not know of any other use for these articles than as stated.

On cross-examination he testified he distinguished between these articles and those he used at home as follows:

The mirrors we have at home, the one that I use in my own particular home, is fastened in the door of the medicine chest.   *   *   *   On the wall.

*         *         *         *         *         *         *

X Q. Isn't it true that your mirror at home is primarily designed to reflect the image of the person who looks in the mirror?—A. It is.

X Q. Isn't it equally true that articles like Exhibits 1, 2, 3, 4, and 5 are especially designed to be used as reflectors on tables?—A. This is used exactly in the manner I have described.

X Q. But Exhibits 1, 2, 3, 4 and 5 are primarily designed to be used as reflectors on tables?—A. Yes, sir.

It was then established that these articles are under 144 square inches in dimensions.

*Defendant's witness Mernoff* testified he is assistant manager of a glass, mirror, and novelty factory located in Brooklyn; that his firm manufactures and sells articles similar to these exhibits; that he has sold such articles "as *mirror* plateaus". He then testified as follows:

Q. Have you ever seen articles like Exhibits 1, 2, 3, 4 and 5 used in any other manner except on a table, for reflection purposes?—A. No, I have not.

He further testified that a table mirror "is commonly known for reflecting purposes, for looking into it for your own personal use. These articles are used for decorative purposes only"; that there is a design on the face of the exhibits for decorative purposes "there is a soft backing on it, which is put there so that it won't scratch when it is laid down on the table, whereas a mirror for decorative purposes is hung on the wall, or framed in a hand mirror for personal use."

Referring to the decoration on the face of the exhibits the witness testified:

They don't use that decoration on any mirrors where they use them for personal use. It is only for decorative purposes.

He further testified he did not find any hooks or holes in the exhibits "which would enable a person to hang up said exhibits and use them as mirrors."

On cross-examination he testified he recognized his reflection in a mirror, and the same is true of these exhibits; *that a mirror is not*

*limited to a reflecting surface to be used personally.* The witness was then questioned as to mirrors used in automobiles "to see if any one is coming up behind you," to "show cases with mirrors in the back," and to mirrors used as decorations so "that no one in the room can view their reflection in it," as mirrors not used to reflect the person; also as to mirrors used in compacts by women and "wall mirrors that were not framed," as examples of mirrors used to reflect the person, without frames.

*Defendant's witness Weiner* testified he is a designer for various forms of mirrors and patterns, including articles like these exhibits; that the difference between these exhibits and wall mirrors is as follows:

These mirrors are created for use, like Exhibits 1 to 5, to be used for showing up various ornaments that are placed on dressers or tables, or for flower purposes. They are not to be used on walls.

Judge Brown. Would they ask you to design a table mirror?

The Witness. Yes, sir; a plateau, *which means a table mirror*, which can't be used on the wall. [Italics ours.]

In response to a question by the court the witness testified that when he used the term "plateau" or "mirror" it was based on an order for the design, which he received for the purpose.

He further testified that when he received an order for a plateau, he understood it referred to *"Mirrors* for a table, or whatever they want," [italics ours] and that it meant a *mirror* like Exhibits 1 to 5; that articles like the exhibits are used "On dressers, for perfume bottles, for use with flowers"; that he had never seen articles like Exhibits 1 to 5 suspended from walls; that these articles are described as pla- teaus and are silvered and decorated.

Further testifying on cross-examination he stated that these exhibits are described as plateaus; that "plateau" means flat, and there are "plateau *mirrors,* and pocket mirrors, compact mirrors, automobile mirrors, and other mirrors" [italics ours]; *that they are all mirrors* "if they are silvered on the back."

*Defendant's witness Masso* testified he is a glass worker; that he has manufactured glass mirrors and articles like these exhibits; that he has seen articles like Exhibits 1 to 5 displayed "in hundreds of places" as follows:

Every practical worker in the mirror industry, at certain times of the year when things are slow, they make all kinds of novelties for themselves. In every one of the men's homes that I know of, you will find these articles on dresser tables, and ornaments placed on them for decorative purposes. I have had occasion to go to department stores and other places where these things are on display, and in the showrooms, and these very articles are put on display in showrooms. In order to show their decorative values ornaments are placed on top of them. In every one you will see these plateaus, which is a trade name given

to them for no other reason except that they are used to lay flat, and to put articles of decorative value on top of them. * * * they were always known as plateaus.

The witness testified that in his opinion these articles could not be used as mirrors by reason of the decorations at the top and bottom of the article, which "obstruct the vision."

On cross-examination he testified he had seen mirrors behind bars in saloons with decorations thereon, and that "a plateau only means a *mirror* that is going to be laid on the table * * * but we would not call it a mirror"; that he can see himself in any one of these exhibits, and that mirrors in automobiles are "primarily used to reflect the road behind and see other vehicles approaching."

In Funk & Wagnall's Standard Dictionary "Mirror" is defined as follows:

An object having a nearly perfect reflecting surface, used ordinarily to view what cannot well be seen directly, as the person of the observer, * * * usually of glass backed with an amalgam of tin or silver with mercury or a polished surface of metal.

The dictionary gives many examples of mirrors not used to reflect the person. A mere test of these samples by looking into them indicates they will reflect the face satisfactorily, or any other object, whether it is placed thereon or not, or whether or not the mirror or plateau is held by the user in an upright position.

The *Hague* case, Abstract 37755, 28 Treas. Dec. 808, cited by the Government in its brief, is not in point. The merchandise covered by that case consisted of *puzzles* with mirrors on the backs. We said:

It seems to us without question that these articles are intended for the amusement of children. The mere fact that there is a small mirror on the back is not controlling * * * and from our knowledge derived from an inspection of the article we would classify it as a toy.

It is elementary in customs practice that if an article is a toy it is classifiable as such, even though it may be *eo nomine* covered by some other provision of the tariff act.

The same is true of the *Lisk* case, 17 C. C. P. A. 234, T. D. 43670.

The other cases cited by defendant in its brief are not controlling.

Counsel for defendant seems to infer that articles must be used for the sole purpose of reflecting the human form or countenance to be mirrors; that they must always be placed in an upright position, or hanging on a wall; and that because the articles at bar are placed flat on a table, sideboard, etc., and are used to reflect objects, they are not mirrors. Counsel states in his brief "The possible use of the involved article as a mirror [meaning apparently in an upright position so that it can be used for toilet purposes to reflect the human face or form] is such a trifling, fugitive use that it cannot fix the

character of the article as a mirror." Counsel cites the *Lisk* case, *supra*, on toys, heretofore referred to by us as *not* being in point; for as stated in paragraph 1513 of the tariff act—

The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

So that if an article is *eo nomine* mentioned as a mirror in paragraph 230, *if it is a toy* it is taken out of that paragraph and placed in paragraph 1513; therefore the *Hague* and *Lisk* cases, *supra*, are not controlling on this issue.

That mirrors may be used for other purposes than to reflect the human countenance or form is evidenced by the following authorities:

*G. W. Sheldon & Co.* v. *United States*, T. D. 40221, G. A. 8808, 45 Treas. Dec. 674. We quote the syllabus in that case:

So-called head mirrors about 3½ inches in diameter, used by physicians, surgeons, and dentists in making examinations of the ear, nose, throat, etc., are properly dutiable under the provision for "all mirrors, not specially provided for, not exceeding in size one hundred and forty-four square inches" in paragraph 230 of the act of 1922, rather than under the provision for surgical instruments composed wholly or in part of metal in paragraph 359 of the same act. * * *

In *H. W. Robinson & Co.* v. *United States*, T. D. 42586, 53 Treas. Dec. 150, the holding was as follows:

Mirrors used by dentists to reflect the teeth to ascertain their condition by an examination of the reflection of the tooth therein are more specifically provided for under the provision in paragraph 230, tariff act of 1922, for "all mirrors, not specially provided for, not exceeding in size 144 square inches, with or without frames or cases" than as dental instruments in paragraph 359.

In addition, Funk & Wagnall's Standard Dictionary under "Mirror" mentions several mirrors not used for toilet purposes, such as: "Archimedean Mirror"; "Claude Lorrain Mirror"; "Fresnel's Mirror"; "Laryngeal Mirror"; "Lloyd's single mirror"; "mercury mirror"; and "parabolic mirror"; besides dentists' mirrors, such as were passed on in the *Robinson* case, *supra*.

We are abundantly satisfied that these articles are mirrors under all conditions, as they reflect the image before them whether hanging on a wall, held in the hand, or placed in a flat position on a table or desk, and being under 144 square inches in dimensions clearly fall within the provisions of paragraph 230. The exhibits themselves are potent witnesses of this fact. They have every element possessed by mirrors. The Government seems to place considerable stress on the fact that they are decorated, and without means of permitting them to be hung on walls. We do not see that these facts militate against their use as mirrors. It is the fact that images are reflected

from the surfaces of these articles that places them in the category of mirrors. If they were pieces of ordinary glass without reflecting qualities, they might perform the duties of a plateau, but they would not be mirrors, for they would fail to reflect the images placed thereon. Of themselves, these exhibits have every indication of being mirrors.

We therefore hold this merchandise dutiable, as claimed, under the *eo nomine* provision for mirrors in paragraph 230 (b). This provision of the tariff act in our judgment is more applicable thereto than the general provision for "all articles of every description *not specially provided for* * * * composed of * * * glass * * * silvered, * * * or decorated or ornamented in any manner" in paragraph 218 (f) of the same act, under which they were classified by the collector.

The protests are sustained to this extent. They are overruled in all other respects. Judgment for plaintiff accordingly.